# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| BANK OF NEW YORK MELLON,<br><br>　　Plaintiff<br><br>v.<br><br>FOOTHILLS AT MACDONALD RANCH MASTER ASSOCIATION, et al.,<br><br>　　Defendants | Case No.: 2:17-cv-01195-APG-BNW<br><br>**Order (1) Granting in Part SFR's Motion to Dismiss; (2) Granting Foothills' Motion to Dismiss; and (3) Denying Foothills' Motion for Summary Judgment as Moot**<br><br>[ECF Nos. 80, 81, 97] |

Plaintiff Bank of New York (BONY) sues to determine whether a non-judicial foreclosure sale conducted by defendant Foothills at MacDonald Ranch Master Association (Foothills) extinguished BONY's deed of trust that encumbered property located at 1680 Liege Drive in Henderson, Nevada. Defendant SFR Investments Pool 1, LLC (SFR) purchased the property at the homeowners association (HOA) foreclosure sale.

BONY sued for declarations that its deed of trust remains as an encumbrance against the property and that it may enforce the deed of trust through either a judicial or non-judicial foreclosure sale. BONY also sued Foothills and its foreclosure agent, defendant Nevada Association Services, Inc. (NAS), for equitable indemnification and wrongful foreclosure in the event that BONY's deed of trust was extinguished by the HOA sale.

I granted SFR and Foothills' motions to dismiss, ruling that BONY's declaratory relief and wrongful foreclosure claims were untimely. ECF No. 61. However, I granted BONY leave to amend to allege facts that may support waiver, estoppel, or equitable tolling of the limitations period. *Id.* I also ruled that BONY's equitable indemnification claim was timely and not subject

to dismissal on the grounds raised by Foothills but suggested that BONY consider whether equitable indemnity was a viable claim in the factual context of this case. *Id.*

BONY filed a second amended complaint in which it reasserts its claim for declaratory relief regarding the deed of trust's validity. ECF No. 71 at 13-15. BONY also repleads its wrongful foreclosure claim, but asserts it only against Foothills' foreclosure agent, Nevada Association Services, Inc. (NAS).[1] *Id.* at 16-17. BONY dropped its equitable indemnification claim and added a claim for breach of the Covenants, Conditions, and Restrictions (CC&Rs) against Foothills. *Id.* at 15-16.

SFR and Foothills move to dismiss, both arguing the declaratory relief claim is untimely. SFR also contends the wrongful foreclosure claim is untimely. SFR and Foothills argue that my prior order did not grant BONY leave to add the new claim for breach of the CC&Rs. Alternatively, Foothills contends the new claim lacks merit. Foothills also moves for summary judgment on a variety of grounds.

BONY responds that it has adequately alleged a factual basis for equitable tolling for the declaratory relief claim. Alternatively, it requests I reconsider my ruling that a four-year limitation period applies to this claim. BONY contends it properly added a claim for breach of the CC&Rs and that genuine issues of fact remain regarding whether Foothills breached the CC&Rs.

The parties are familiar with the facts, and I will not repeat them here except where necessary to resolve the motions. I grant SFR's and Foothills' motions to dismiss the declaratory relief claim because BONY has not plausibly alleged a basis for waiver, estoppel, or equitable tolling. Additionally, I grant Foothills' motion to dismiss the newly added claim for breach of

---

[1] NAS has defaulted in this action. ECF No. 70.

the CC&Rs because I did not grant leave for BONY to add a new claim, the time to amend the pleadings has passed, and BONY has not shown good cause to amend the scheduling order to allow late amendment to add a claim it has known or should have known about since the inception of this case. I deny SFR's motion to the extent it is directed at the wrongful foreclosure claim because that claim is asserted only against NAS. I deny Foothills' motion for summary judgment as moot.

**I. ANALYSIS**

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). However, I do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

**A. Declaratory Relief**

"A claim may be dismissed as untimely pursuant to a 12(b)(6) motion only when the running of the statute of limitations is apparent on the face of the complaint." *United States ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (alteration and quotation omitted). A limitation period begins to run "from the day the cause of action accrued." *Clark v. Robison*, 944 P.2d 788, 789 (Nev. 1997). A cause of action generally accrues "when the wrong occurs and a party sustains injuries for which relief could be sought."

*Petersen v. Bruen*, 792 P.2d 18, 20 (Nev. 1990); *see also State ex rel. Dep't of Transp. v. Pub. Emps.' Ret. Sys. of Nev.*, 83 P.3d 815, 817 (Nev. 2004) (en banc) ("A cause of action 'accrues' when a suit may be maintained thereon." (quotation omitted)). Nevada has adopted the discovery rule, and thus time limits generally "do not commence and the cause of action does not 'accrue' until the aggrieved party knew, or reasonably should have known, of the facts giving rise to the damage or injury." *G & H Assocs. v. Ernest W. Hahn, Inc.*, 934 P.2d 229, 233 (Nev. 1997).

The HOA foreclosure sale took place on July 27, 2012, the trustee's deed upon sale was recorded on August 1, 2012, and BONY filed the original complaint in this matter on April 27, 2017. ECF Nos. 1 at 1; 24 at 7. As I stated in my prior order, the four-year catchall limitation period in Nevada Revised Statutes § 11.220 applies to BONY's claim for a declaration that the deed of trust was not extinguished, so the claim is untimely. I nevertheless gave BONY leave to amend to allege facts supporting waiver, estoppel, or equitable tolling.

BONY did not oppose SFR and Foothills' motions arguing that BONY had not alleged a basis for waiver or estoppel, so I grant those portions of the motions as unopposed. LR 7-2(d). However, the parties dispute whether BONY has adequately alleged facts supporting equitable tolling.

"Equitable tolling operates to suspend the running of a statute of limitations when the only bar to a timely filed claim is a procedural technicality." *State Dep't of Taxation v. Masco Builder Cabinet Grp.*, 265 P.3d 666, 671 (Nev. 2011). Equitable tolling "is appropriate only when the danger of prejudice to the defendant is absent and the interests of justice so require." *Id.* (quotation omitted). The inquiry "focuses on whether there was excusable delay by the plaintiff: If a reasonable plaintiff would not have known of the existence of a possible claim

4

within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs." *City of N. Las Vegas v. State Local Gov't Employee-Mgmt. Relations Bd.*, 261 P.3d 1071, 1077 (Nev. 2011) (en banc) (quotation omitted). Nonexclusive factors to consider when determining whether it would be just to employ equitable tolling include: "the [plaintiff]'s diligence, knowledge of the relevant facts, reliance on misleading authoritative agency statements and/or misleading . . . conduct [by the defendant], and any prejudice to the [the defendant]." *Id.*

### 1. Diligence/Knowledge of Relevant Facts

BONY argues that it was diligent prior to the HOA foreclosure sale because its servicer tendered the superpriority amount and thus extinguished the superpriority lien. BONY also argues that it took no action immediately after the sale because NAS misled it as to whether a superpriority lien had been foreclosed where the notices did not identify the superpriority amount and NAS took the position in an NRED arbitration in another case that an HOA's superpriority lien was not triggered until the deed of trust was foreclosed. BONY contends that based on these facts, the time between August 1, 2012 (when the trustee's deed from the HOA foreclosure sale was recorded) and December 12, 2012 (when NRED issued its advisory opinion stating that HOA sales can extinguish deeds of trust) should be tolled.

BONY also argues that SFR filed numerous lawsuits for the properties it purchased at HOA foreclosure sales and then moved to stay those lawsuits until the Supreme Court of Nevada ruled on whether an HOA foreclosure sale extinguishes a deed of trust. BONY contends that as a result, the time from April 19, 2013 (when SFR started seeking stays in other cases) and September 18, 2014 (when the Supreme Court of Nevada issued the decision *SFR Investments Pool 1 v. U.S. Bank*, 334 P.3d 408 (Nev. 2014) (en banc)), should be tolled. BONY also argues

5

that on June 17, 2015, BONY recorded a notice of default and election to sell but SFR took no action in response. BONY then filed this lawsuit almost two years later, on April 27, 2017.

The defendants contend that BONY has not alleged facts showing diligence because although the HOA began its foreclosure process in November 2009, BONY did nothing to stop it or conduct its own foreclosure proceedings. They also assert that although BONY attempted to tender the superpriority amount in June 2012, it did nothing after that until it filed its complaint in April 2017 other than record a notice of default in 2015. SFR contends that it sent a cease and desist letter in response to the notice of default, after which BONY took no action until it filed this lawsuit. According to the defendants, the fact that BONY's servicer offered to pay the superpriority lien shows BONY knew its deed of trust was in jeopardy before the HOA sale yet it took no action to stop the sale even after the tender was rejected. Finally, they note that despite the NRED issuing its advisory opinion in 2012, the Supreme Court of Nevada's *SFR* decision in 2014, and SFR's cease and desist letter in 2015, BONY still waited until 2017 to file this case.

As an initial matter, I decline to consider SFR's contention that it sent a cease and desist letter in 2015. The second amended complaint does not mention the cease and desist letter and does not depend on it, nor is it a matter of judicial notice. SFR has not identified any basis for me to consider the alleged cease and desist letter at the dismissal stage.

Nevertheless, BONY has not alleged facts plausibly showing diligence given the facts it knew. Even if NAS and the NRED arbitrator lulled BONY into initially believing that the HOA sale did not extinguish the deed of trust, that was soon contradicted by an opinion that NRED issued in December 2012. NRED Advisory Opinion 13-01 at 9 ("An association can foreclose its super priority lien and the first security interest holder will either pay the super priority lien

amount or lose its security.").[2] Indeed, BONY acknowledges that NRED's December 12, 2012 opinion put BONY on notice that its deed of trust may be at risk. ECF No. 86 at 11. Even if I tolled the time between the August 1, 2012 recording of the trustee's deed upon sale and the December 12, 2012 NRED opinion, BONY's complaint is still untimely.

Moreover, BONY's own allegations show it knew prior to the HOA sale that its deed of trust was in jeopardy. Prior to the sale, Bank of America, who was servicing the loan, sent a letter to NAS requesting the superpriority amount, but NAS did not respond. ECF No. 71 at 7. Bank of America calculated the superpriority amount on its own and tendered that amount to NAS, but NAS refused to accept the check. *Id.* Rather than showing diligence[3] or lack of knowledge, this evidence suggests both that BONY and its servicer were aware that the deed of trust was at risk and that BONY was not diligent in timely filing a declaratory relief claim after it knew its tender had been rejected.

Additionally, the fact that SFR had filed numerous lawsuits taking the position that HOA foreclosure sales extinguished deeds of trust should have put BONY on notice that SFR would take the same position with respect to this property. The fact that SFR was moving to stay some of those lawsuits until the Supreme Court of Nevada ruled on whether an HOA foreclosure sale extinguishes a deed of trust does not suggest BONY was unaware of the need to file its own claim to preserve the deed of trust in relation to this property.

Finally, the fact that BONY recorded a notice of default on June 17, 2015, but SFR allegedly took no action in response, does not support equitable tolling. BONY apparently did

---

[2] I may take judicial notice of NRED's advisory opinion without converting the defendants' motions to dismiss into ones for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

[3] I refer here to diligence in timely discovering and asserting a declaratory relief claim, not diligence in attempting to determine and payoff the superpriority lien.

7

not follow up on its notice with further steps in the foreclosure process and waited almost two more years to file this lawsuit.

In sum, BONY has not alleged facts plausibly showing that it was diligent in light of the facts it knew during the limitation period. Instead, BONY has shown it knew prior to the HOA sale that its deed of trust was at risk; that its tender had been rejected; that several months after the HOA sale, NRED issued an opinion that HOA foreclosure sales extinguish deeds of trust; that SFR was taking the position generally that HOA foreclosure sales extinguish deeds of trust; and that while SFR was staying some cases, it was litigating others, as the *SFR* decision itself shows. Yet BONY let more than four years pass before it filed suit. This is not a case where a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period. By BONY's own allegations, it knew everything it needed to know as of the date of the HOA foreclosure sale, and certainly no later than December 2012, but it failed to file suit until April 2017.

2. Reliance on Misleading Authoritative Agency Statements

BONY contends it relied on judicial rulings that a five-year limitation period applied to claims like BONY's declaratory relief claim. BONY also argues that it relied on authoritative statements by NAS and the NRED arbitrator. The defendants assert that BONY has not alleged that it relied on judicial pronouncements about the statute of limitations. They also argue that neither NAS nor the NRED arbitrator are authoritative administrative agencies, and even if they were, NRED issued its opinion that an HOA sale extinguishes a deed of trust in December 2012, so at least as of that date, BONY knew from an authoritative agency statement that its deed of trust was at risk.

Assuming without deciding that court rulings could qualify as authoritative statements under Nevada's equitable tolling law, BONY has not alleged that it relied on court rulings about the statute of limitations. Because I granted leave to amend specifically to allege facts supporting equitable tolling, one would expect BONY to have alleged that reliance if it had a factual basis to do so. It has not.

NAS is not an administrative agency nor is its legal position authoritative. Likewise, the NRED arbitrator's decision was not authoritative because it was a non-binding decision in a particular arbitration. Finally, NRED issued an opinion in December 2012 in which it concluded that HOA sales would extinguish deeds of trust. BONY thus has not plausibly alleged reliance on an authoritative agency statement to support equitable tolling.

### 3. Reliance on Misleading Conduct by Defendants

BONY argues that NAS falsely assured BONY that HOA foreclosure sales would not extinguish deeds of trust. BONY also argues that SFR led BONY to believe that it preferred delaying quiet title litigation between April 19, 2013 and September 14, 2014, because SFR sought stays in many other cases involving HOA foreclosure sales. SFR responds that it has always acted as if the deed of trust has been extinguished and so has not misled BONY.[4]

Even if NAS initially lulled BONY into a false sense of security, and even if the CC&Rs provided similar assurances, the NRED decision in December 2012 put BONY on notice that its deed of trust was in jeopardy. BONY also knew that SFR took the position with respect to other properties that the deed of trust was extinguished and that SFR was the purchaser of this

---

[4] Because BONY has not plausibly alleged a basis for equitable tolling even when considering all facts as to all defendants, I need not address SFR's and Foothills' argument that only each defendant's own acts may be considered when determining whether to apply equitable tolling as to that defendant.

property. BONY has not alleged it had some reason to think SFR would take a different stance in relation to this property. Additionally, while SFR was staying some cases, it was litigating others, as the *SFR* decision itself shows. BONY thus has not plausibly alleged that NAS's, Foothills', or SFR's actions or statements lulled BONY into not asserting its declaratory relief claim in a timely manner.

Because BONY has not plausibly alleged that the interests of justice favor equitable tolling, I need not address whether the defendants would be prejudiced. *State Dep't of Taxation*, 265 P.3d at 671 (stating that equitable tolling "is appropriate only when the danger of prejudice to the defendant is absent and the interests of justice so require" (quotation omitted)); *see also Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) ("Although absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify such tolling is identified, it is not an independent basis for invoking the doctrine and sanctioning deviations from established procedures."). I therefore grant SFR's and Foothills' motions to dismiss the declaratory relief claim as untimely.[5]

////

////

---

[5] In its oppositions, BONY also requested reconsideration of my prior order that ruled the four-year catchall limitation period applies to BONY's declaratory relief claim. BONY contends the four-year catchall limitation period should not be applied retroactively and argues I should reconsider my ruling that the four-year catchall applies. SFR responds that BONY could and should have raised these issues earlier and that BONY's arguments are meritless.

BONY did not file a separate motion for reconsideration as the Local Rules require. *See* LR IC 2-2(b) ("For each type of relief requested or purpose of the document, a separate document must be filed and a separate event must be selected for that document."). Moreover, BONY's arguments are either a rehash of arguments already made or arguments that could have been made earlier. I therefore deny the request for reconsideration. *See Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); *In re AgriBioTech, Inc.*, 319 BR 207, 209 (D. Nev. 2004).

**B. Wrongful Foreclosure**

The second amended complaint asserts a wrongful foreclosure claim against NAS. ECF No. 71 at 16-17. Because this claim is brought only against NAS, SFR lacks standing to challenge it. I therefore deny this portion of SFR's motion.

**C. Breach of the CC&Rs**

BONY's first amended complaint asserted a claim for equitable indemnification. ECF No. 24 at 11-12. Foothills moved to dismiss this claim as untimely or alternatively because there is no statutory or contractual duty of good faith running between Foothills and BONY. ECF No. 27. I denied the motion on these bases. ECF No. 66 at 11-13. However, I advised BONY that equitable indemnification "does not appear to apply at all to this situation," so if BONY decided to amend, "it should consider whether equitable indemnification is a proper claim in this context." *Id.* at 13. In the conclusion of my order, I granted BONY leave to "file an amended complaint to allege facts supporting waiver, estoppel, or equitable tolling . . . ." *Id.* at 18.

My prior order did not grant BONY leave to add new theories of recovery or new facts to support new theories. Rather, I suggested to BONY that its equitable indemnification claim was meritless and thus should not be included in a second amended complaint. My order granted BONY leave to amend only to add facts supporting waiver, estoppel, or equitable tolling.

To the extent BONY's opposition could be construed as a motion to amend to add a claim for breach of the CC&Rs, I deny it. Where, as here,[6] a party seeks to amend after expiration of the scheduling order's deadline for amending the pleadings, the moving party first must satisfy the stringent "good cause" standard under Federal Rule of Civil Procedure 16. *Amerisource Bergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006); *Johnson v.*

---

[6] The deadline to amend pleadings was January 30, 2018. ECF No. 32 at 2.

11

*Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). Rule 16(b)'s "good cause" standard centers on the moving party's diligence. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Johnson*, 975 F.2d at 609. The good cause standard typically will not be met where the party seeking to modify the scheduling order has been aware of the facts and theories supporting amendment since the inception of the action. *See United States v. Dang*, 488 F.3d 1135, 1142-43 (9th Cir. 2007); *Royal Ins. Co. of Am. v. S.W. Marine*, 194 F.3d 1009, 1016-17 (9th Cir. 1999) ("Late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action.") (quotation omitted).

Although Rule 16 does not require a showing of prejudice, I may consider whether prejudice would result to the party opposing amendment. *Coleman*, 232 F.3d at 1295. Prejudice has been found where the plaintiff moved to amend late in the proceedings, thereby requiring the defendant to go "through the time and expense of continued litigation on a new theory, with the possibility of additional discovery." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989) (quotation omitted). Whether to modify the scheduling order's amendment deadline lies within my discretion. *Dang*, 488 F.3d at 1142-43.

BONY has not shown good cause for amending the scheduling order because BONY has been aware of the newly alleged theory and related facts since the inception of the action. BONY knew before it filed the original complaint that: the CC&Rs existed, NAS did not respond to the letter requesting the superpriority amount and rejected the tender, NAS and Foothills then conducted the HOA sale, SFR was contending that HOA foreclosure sales extinguish deeds of trust, and NAS and Southern Highlands did not distribute any of the sale proceeds to BONY. *See* ECF No. 71 at 15-16. Consequently, BONY could and should have asserted its claim for breach

of the CC&Rs in its original complaint or the first amended complaint.  BONY therefore has not shown it was diligent.

Additionally, Foothills would be prejudiced by the late amendment, which would require continued litigation on new facts and a new theory of recovery.  It may also require additional discovery.  I therefore grant Foothills' motion and deny modification of the scheduling order's deadline to amend the pleadings to add a new claim.

**III.  CONCLUSION**

IT IS THEREFORE ORDERED that defendant SFR Investments Pool 1, LLC's motion to dismiss **(ECF No. 80) is GRANTED in part**.  Plaintiff Bank of New York Mellon's claim for declaratory relief is dismissed.

IT IS FURTHER ORDERED that defendant Foothills at MacDonald Ranch Master Association's motion to dismiss **(ECF No. 81) is GRANTED**.  Plaintiff Bank of New York Mellon's claim for declaratory relief is dismissed.

IT IS FURTHER ORDERED that defendant Foothills at MacDonald Ranch Master Association's motion for summary judgment **(ECF No. 97) is DENIED as moot**.

DATED this 10th day of May, 2019.

ANDREW P. GORDON  
UNITED STATES DISTRICT JUDGE